## Case No. 3,698.

### DEALE v. KROFFT.

[4 Cranch, C. C. 448.][1]

Circuit Court, District of Columbia. March Term, 1834.

SET-OFF—DEBTS NOT DUE—PAYMENT — PLEADING—DRAFTS—RIGHTS OF INDORSER.

Mr. Fendall, Mr. Hellen, and Mr. Brent, for plaintiff, contended that the defendant had not shown any title to the draft, as he was no party to it and could not recover upon it at law.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

---

## Case No. 3,699.

### In re DEAN.

[1 N. B. R. 249 (Quarto, 26);[1] 1 Am. Law T. Rep. Bankr. 9.]

District Court, D. Kentucky. 1868.

FEES IN BANKRUPTCY PROCEEDINGS.

Decision as to the fees of registers, clerks, marshals, and assignees, deciding what are legal and what unwarranted and improper.

[Cited in Re Robinson, Case No. 11,937; Re Talbot, Id. 13,727; Re Leachman, Id. 8,157; Re Bininger & Clark, Id. 1,421; Re Noyes, Id. 10,371.]

[In bankruptcy. In the matter of John W. Dean.]

BALLARD, District Judge. In obedience to the order of court made herein, the register has made a taxation of the costs of all the officers of the court, including the assignee, and the bankrupt having filed exceptions to this taxation, the case is now before me on these exceptions. As the case presents many questions of interest common to all the officers in the state who are engaged in the administration of the bankrupt act [of 1867 (14 Stat. 517)], I have thought it best to set out, in writing, my opinion on each exception.

I first notice the exceptions to the bill of the register.

The first item excepted to is the charge of five dollars, "for one day's service under special order form 4, examining papers," &c., August 15, 1867. The 47th section of the act provides that the register shall be paid "for every day's service while actually employed under a special order of the court, a sum not exceeding five dollars." By the 10th section the justices of the supreme court of the United States are required to frame general orders for the following purposes: "For regulating the practice and procedure of the district courts in bankruptcy, and the several forms of petitions, orders," &c. "For regulating the duties of the various officers of said court," &c. In pursuance to this authority the justices of the supreme court have framed general orders and forms. By general order No. 4, it is provided, that "upon the filing of a petition in case of voluntary bankruptcy . . . . the petition shall be referred to one of the registers in such manner as the district court shall direct, . . . . and thereafter all the proceedings required by the act shall be had before him, except such as are required by the act to be had in the

---

[1] [Reprinted from 1 N. B. R. 249 (Quarto, 26), by permission.]

district court," &c. General order No. 5, requires "that the time when, and the place where, the registers shall sit upon the matters arising under the several cases referred to them, shall be fixed by special order of the district court, or by the register acting under the authority of a general order, in each case, made by the district court;" and it enumerates what acts he shall perform and what proceedings he shall conduct. Form No. 4 is the form prescribed by the justices of the supreme court, of the order which the district court is required, by general orders 4 and 5, to enter on the filing of the petition in all cases of voluntary bankruptcy. It is entered as of course in every case, and requires the register to do nothing which he is not required to do by the act and the general orders. An order which the general orders require to be entered as of course in every case cannot, in any just sense, be termed a special order. But it is argued, that this order is termed a special order by general order No. 5, and that it must therefore be held to be such within the meaning of section 47. This argument is founded on a mistake. General order No. 5 does not denominate order form No. 4 a special order. It only provides that "the time when, and the place where, the registers shall act upon the matters arising under the several cases referred to them, shall be fixed by special order of the district court, or by the register acting under the authority of a general order in each case made by the district court." It is only "the time when, and the place where," the register shall act, that this rule contemplates may be fixed by special order. It does not contemplate that what service registers shall perform shall be fixed by special order, for that is prescribed in general terms by general order No. 4, and specifically by general order No. 5. Now, order form No. 4 does not specify any particular service that the register shall perform. It only refers the petition to him "to make adjudication thereon, and take such other proceedings therein, as are required by said act." True, it specifies a day on, or before, which the petitioner shall attend before him, and that he shall act at a particular place "upon the matters arising in the case," but it specifies "no special service" except perhaps "to make adjudication," and this specification is unnecessary, since rule 4 of the general orders provides, that when the petition is referred to a register, "thereafter all proceedings, required by the act, shall be had before him, except such as are required by the act to be had in the district court," and section 4 of the act, among other things, provides that it shall be the duty of the register "to make adjudication of bankruptcy." There is no service generally performed by the register in any case except such as is in one sense performed under order form No. 4; for it requires him not only to make adjudication of bankruptcy, but "to take such other proceedings as are re-

quired by the act." It follows that if it is such a special order as to entitle the register, under section 47, to five dollars or less for one day's service in making "the adjudication of bankruptcy," it must also be a special order for every day's service performed under it. But, manifestly, this is not so, since section 47 provides specific compensation for nearly every service performed under the order. Besides, general order No. 5 does not require that either the time when, or the place where, the register shall act, shall be fixed by special order. Both may be fixed by the register himself, acting under the authority of a general order. The time is, in fact, so fixed by the terms of order form 4, and the place is also practically so fixed under rule 3 of this court. Now, it cannot be that the register is to be compensated for making adjudication, when the place at which he is to make it is specially fixed in the order of reference, and that he is to receive no compensation when he designates the place himself under a general order of the district court; and yet this proposition must be maintained in order to sustain this claim of the register. Such a position seems to me wholly unreasonable. It makes the compensation of the register, in this particular, depend not on the nature or quantum of service performed, but on the form of the order under which he acts, or rather, on the will of the judge, and thus tends to destroy that uniformity which both the constitution and the bankrupt act contemplate. I am sustained in this opinion by the opinion of the learned district judge of the southern district of New York in Re Bellamy [Cases Nos. 1,266–1,268]. And if I were more doubtful of the correctness of my own opinion than I am, I should be inclined to follow his. I think it exceedingly desirable that the practice in the administration of the bankrupt act should be uniform throughout the United States. The first exception is sustained.

The second charge excepted to is "for copy of order of adjudication furnished to bankrupt—two folios at 10c. and certificate 25c.—$0.45." This charge is in precise accordance with the fee prescribed in general order 30. But I am of the opinion that this provision in general order 30 is an inadvertence, so far as it allows twenty-five cents for certifying a copy of a paper when the certificate consists of only one folio. Section 10 of the act, among other things, authorizes the justices of the supreme court to fix the "fees payable, and the charges and costs to be allowed, except such as are established by this act or by law, . . . not exceeding the rate of fees now allowed by law for similar services in other proceedings." But the fee prescribed in the fee bill act of 1853, for a "certificate" is fifteen cents per folio. The justices of the supreme court had no authority to allow more. As it does not appear that the certificate in this instance contains more than one folio, the fee

for the copy of the order and certificate should be thirty-five cents and not forty-five cents. I may also remark that this charge is not payable out of the fifty dollars deposited with the register, nor out of the estate of the bankrupt, but should be paid by the bankrupt himself. The service was performed for him and for him only, and not in the course of the proceedings, and he should pay for it. No order, however, to this effect can be made on the exception of the bankrupt, because it is not for him to object to payment out of either fund. The exception is sustained so far as to reduce the charge from forty-five cents to thirty-five cents.

The next item excepted to is a charge of forty-five cents for a certified copy of memorandum, of two folios, forwarded to the clerk. Section 4 of the bankrupt act requires the register "to make short memoranda in a docket of his proceedings, and to forward to the clerk a certified copy of of said memoranda." No. 30 of the general orders provides that the clerk and register shall have "for every copy of a paper in proceedings in bankruptcy—twenty-five cents for certifying the same, and in addition thereto, ten cents for each folio of one hundred words." I think the memorandum in the docket is a "paper" within the meaning of this order; and therefore that the charge for the certified copy is right, except that it ought to be thirty-five cents instead of forty-five cents, for the reason mentioned when noticing the last exception. The exception is therefore overruled, but the charge, and all similar charges in the fee bill, must be reduced as above indicated.

The next items excepted to are: first, a charge of thirty-five cents for "certified list of creditors who proved debts" furnished to assignee; and secondly, a similar charge for certifying said list to clerk. The exception to the first item is sustained, and to the last overruled. In relation to the first, it is to be observed that the register furn'shes the assignee a certified copy of the list of the debts proved. under sections 23 and 27, only when a dividend is ordered, and no dividend has been ordered in this case. In relation to the second, it is to be said that the clerk must give due notice (form 52), and in order to give the notice he must have a list of the creditors who have proved their debts, and it is proper that the register or assignee should furnish it to him. This list is a "paper" within the meaning of general order 30, for the copying and certifying of which the register has the right to charge.

The exception to charge for order form No. 15, and certificate of same, to charge for "order appointing assignees and notice," and to charge for making transfer of estate, are all sustained; and the exceptions to all similar charges are likewise sustained. I see no foundation whatever for the last charge. I think the register should be paid

for making the conveyance of the bankrupt's estate to the assignee, and, in fact, for every specific service which he performs, but neither the act nor the general orders provides any compensation for this service; and I am not authorized to tax a fee which is not provided for by law. The register insists that the other charges are properly taxable under the fee bill act of 1853. He says that he performs, in the course of the proceedings, the functions of both judge and clerk, and that he should be paid for the service performed in both capacities—that the clerk is by the act of 1853, entitled to fifteen cents a folio, "for entering any order," and he argues that the first clause of section 47 of the bankrupt act gives him the fees of a clerk when he writes orders, or performs other duties of a clerk. The clause referred to is as follows: "That in each case there shall be allowed and paid, in addition to the fees of the clerk of the court as now established by law, or as may be established by general order, under the provisions of this act, for fees in bankruptcy, the following fees, which shall be applied to the payment for the services of the register." Then follows the specification, first, of the fees of the register; and secondly, of the fees of the messenger. It is insisted that this clause means that the register is entitled not only to the fees heretofore enumerated, but to the fees of clerk, in addition, where he performs the duties of clerk. I think this is not its meaning, as might be easily shown by an analysis of its language and by an examination of the general provisions of the whole section. But I cannot stop to make either the one or the other. I simply say that it is very obvious that the whole section is to be construed as prescribing the fees of all the officers of the court, clerk, register, and messenger, and is to be understood as if read thus: The "fees in bankruptcy" shall be as follows: Of the clerk, these "as now established by law." Of the register, these: "For issuing warrants, two dollars," &c. Of the messenger, these: "For service of warrant, two dollars," &c. The enumeration of these fees shall not prevent the judges, under the authority given them in section 10, from reducing them, or from prescribing a tariff of fees for all other services.

The exception to charge for copy of schedules for assignee, is overruled. but the charge for certificate must be reduced from twenty-five cents to fifteen cents. Section 4 of the act requires the register "to furnish the assignee with a certified copy . . . . of the schedules of creditors and assets filed in each case." I think that these schedules are "papers" within the meaning of the second clause of general order No. 30.

The exception to charge for taking bond of the assignee with surety, is overruled with some hesitation. True, section 47 provides a specific fee of two dollars to the register for

every bond with sureties; but it appears in this case that the bond was required by the register and not by the judge, and I am of the opinion that under section 13 of the act, it is the judge only—that is, the district judge —who can require an assignee to execute a bond. Still, as the bond is, perhaps, not void, but valid as a common law, if not as a statutory bond, the register should, I suppose, be paid for taking it.

The exception to charge "for application for second and third meetings of creditors" is overruled, but the charge should, I think, be reduced from two dollars to one dollar, as there was but one application. Section 47 gives the register "for every application for any meeting under this act one dollar." This provision is not very intelligible. It is not certain whether it contemplates an application to, or by, the register, but, as it is more reasonable to pay one for his own services rather than another's, I suppose it means that whenever the register applies to the creditors, that is, orders them to meet, he is entitled to the fee. The court was not, it seems, applied to by the assignee under sections 27 and 28 to call the second and third meetings of creditors, but the register, when he directed order form 51 to be entered, in pursuance of general order No. 25, directed that the second and third meetings of creditors should be had on the day fixed in the order for the creditors to appear and show cause why a discharge should not be granted. Where there are no assets, and I have already said there are none in this case, I do not see any necessity for the second and third meetings of creditors, or that they are required by the act. These meetings, it seems to me, the act contemplates, are to be held only for the purpose of ordering a dividend. But as there are no assets, there could be no dividend. Why then should there be a meeting? The register seems to understand general order No. 25, as requiring the second and third meetings of creditors, even when there are no assets, and such seems to be its most obvious construction, but I think this cannot be its meaning if it be examined in connection with the provisions of the 27th and 28th sections of the bankrupt act. It is therefore ordered that in future proceedings in bankruptcy in this district no meetings of creditors, except the first, shall be ordered where there are no assets, or where no creditor has proven his debts. The exception to charge "for application for final meeting of creditors" is sustained. It appears that the "meeting" here termed a "final meeting" is the possible coming together of creditors in pursuance to the notice contemplated by section 29, to show cause why a discharge should not be granted. I think that this is not a "meeting" at all in contemplation of the act. It is not so denominated. The creditors are not required to "meet" but to "show cause," and this they might do without any "meeting." Nor is any "meeting" in fact held. Moreover, if this was a "meet-

ing," there was no separate application made for it. It was applied for along with the second and third meetings, and for this application a fee has already been allowed.

The exception to charge "for attending second and third, and final meetings under order 51," is sustained so far as to reduce the charge to three dollars. I do not regard order form 51 as a special order, for the reason given when noticing the first exception; and section 47 allows only three dollars for each day in which a meeting is held.

The exception to charge "for final examination of bankrupt, ten folios at twenty cents, and certificate twenty-five cents," is overruled, except that the charge for the certificate should be fifteen cents, and not twenty-five cents as before stated. Section 47 prescribes as a fee to the register for taking depositions, the fees now allowed by law. The act of 1853 allows for taking depositions twenty cents a folio. I think the "final examination" is a deposition within the meaning of the 5th and 26th sections of the act.

The exception to charge five dollars for one day's service, under special order of the 25th November, is overruled. This order was not made as of course in the proceedings. It requires the register to render a service not specifically enjoined on him by either the act or general orders. It requires him to examine the papers and steps, and to report to court on their regularity. I therefore think it is a special order, for service under which the register may, under section 47, be allowed five dollars. It is therefore ordered that he be allowed that sum.

The exception to charge "for discharge" is overruled. Section 47 provides that the registers shall have, as a fee, two dollars for every discharge, when there is no opposition. There was no opposition in this case, and therefore the charge, being expressly provided for, must be sustained. I do not know why the register should be allowed a fee for a discharge, when there is no opposition, and none when there is opposition, nor why he should be allowed a fee in either case, since, by the terms of section 4 of the act, he cannot grant a discharge in any case. But the law expressly allows the fee where there is no opposition, and I have nothing to do with its reasonableness.

The exception to charges "for stationery," "postage," and "incidental expenses, rent, clerk hire," &c., are all sustained. There is no warrant for these charges, either in the act or the general orders. The register was not required to render, and did not render, any service in this case at any place other than his residence; consequently he has incurred no travelling expenses, and no expenses incident thereto. It is such expenses incurred by the register, and such only that are, I think, provided for by section 5 of the act, and by general order No. 12.

I come now to consider the exceptions to the clerk's fee bill.

The first exception is to charge "filing and entering petition and schedules and oaths A and B @ 10c.—30c."—and it is overruled. The bankrupt contends that the petition and schedules are one paper, and therefore that the fee should be ten cents. I think they are three papers at least.

The exception to charge for "issuing order form 4, one dollar," is sustained. The clerk insists that this order is a process, inasmuch as it requires the register to proceed, and the petitioner to appear before the register; and, therefore, that he may charge one dollar therefor under the act of 1853. I think it is not a process, but simply an order. It is denominated an order in the last clause of general order No. 4, and a copy of it is there required to be sent or delivered to the register. The charge should be as for a copy under the act of 1853 [10 Stat. 161].

The exception to the charge of sixty-five cents for drawing assignment and affixing seal of court to it, is overruled, if the clerk really rendered the service charged for. By the act of 1853, the clerk is entitled to fifteen cents a folio for drawing any bond, making any record, &c., and ten cents a folio for copying same. I think the drawing of the assignment, when really executed by the clerk may, by a liberal construction, be covered by this provision. The statute seems to allow the clerk fifteen cents a folio for drawing all original writings, and ten cents a folio for copies. Of course, if he does not, in fact, perform the service, as is intimated he did not in this case, he is not to be paid.

The exception to charge for "issuing warrant form 45," is overruled. Form No. 45, though in one sense an order, is required to be issued by the clerk under the seal of the court and delivered to the bankrupt. I think, therefore, that it is a process within the meaning of general order No. 2 and of the fee bill act of 1853.

The exception to charge for "certificate of discharge and seal" is overruled. The certificate of discharge is not, as the counsel of bankrupt supposes, the same thing as the order of discharge. The one is entered in the minute or order book of the court, and the other is delivered to the bankrupt.

The exception to charge for "entering on six papers, certificate of day and hour of filing at fifteen cents a folio," is overruled. General order No. 1 requires the clerk to enter upon each petition in bankruptcy the day, and hour of the day, upon which the same shall be filed, and, also, to make a similar note upon any subsequent paper filed with him. When this entry or note is made, it is evidence of the facts stated, and is, for every legal purpose, a certificate. And, I think, it is to be regarded as a certificate within the fee bill act of 1853, for the making of which the clerk may charge fifteen cents for one folio. I do not understand how this charge happens to be made in reference to only six papers. In my opinion this entry should be made on every paper filed with the clerk, whether filed with him in the first instance, or with the register first, and then with him; and I think that every writing is "a paper" within the meaning of this rule, no matter of how many sheets it is composed, which relates to one particular subject. To illustrate: I think the petition is one paper, schedule A and oath another, order form No. 4 another, order form No. 5 another, and so on. I also think that the "filing and entering of each paper" is a service distinct from the certifying "upon" it of the "day and hour" of its filing. In the one case the entry is made in the docket and in the other upon the paper itself. I am therefore inclined to think, and do order that the exceptions to the charges for "filing and entering papers delivered to him by register," be overruled.

I observe a charge in the bill of the clerk "for clerk's certificate and seal to judge's signature to certificate of discharge," which is not excepted to, and which could not be excepted to by the bankrupt, if, as I suppose, this service was rendered at his request. But I think it proper to say, that in my opinion this charge should be paid by the bankrupt himself, and is not payable out of the fifty dollars deposited under section 47, nor out of the estate of the bankrupt. Neither the act nor the general orders require any such certificate, and it is, therefore, not a service rendered in the course of the proceedings in bankruptcy.

The bill of the messenger embraces the following items only:

| | |
|---|---|
| For service of warrant | $ 2 00 |
| For each written note to creditors in schedule, 10 cents | 6 90 |
| For actual and necessary expenses in publication of notices | 4 00 |
| Postage | 1 97 |
| For copying notices, 483 folios, 10c. per folio | 48 30 |

The marshal says he does not think the law authorizes the last charge, but he is informed that the practice in other districts is to allow it, and, therefore, he submits to the court whether he is or is not entitled to it notwithstanding his own opinion is adverse to it. My information corresponds with that of the marshal so far at least as the practice prevails in some of the districts. I think, therefore, he has very properly submitted the question to the court. I would unhesitatingly allow the charge if I thought it authorized, wholly irrespective of the opinion of the marshal in relation to it. The 47th section of the bankrupt act provides that the messenger shall be paid the following fees: . . . Third. "For each written note to creditor named in the schedule, ten cents." Fourth. "For custody of property, publication of notices, and other services. his actual and necessary expenses," . . . the same to be taxed or adjusted by the court. "For cause shown, and upon hearing thereon, such further allowance may be made as the court in its discretion may determine." I do not

think that this last clause means to authorize the court to make a "further allowance" for the performance of service by the messenger, for which a specific compensation is provided in the act. The law allows the messenger specifically "ten cents for each written note to the creditor named in the schedule," and I see not upon what pretence the court can, under this clause, allow more. But I do not understand that this charge is anywhere attempted to be sustained under this clause, or under any provision of the bankruptcy act. If I am informed correctly, it is claimed under the fee bill act of 1853, which gives the marshal a fee of "ten cents per folio for copies of . . . papers furnished at the request of any party." But I do not see that these notices are copies of any paper. Each notice is an original paper, and each differs from the others, at least in the name of the person to whom it is addressed, and usually in the name of the place to which it is directed. It is true, that the body of all the notices is identical, but this does not make any one a copy of another. No one is any more a copy than another. Therefore, if one is a copy all are copies, and if one is an original all are originals. There can be no copy without an original, and as one must be an original, it follows that all are originals. Moreover, these notices are not "furnished at the request of any party." They are sent by the messenger, because the law requires him to send them, and not because they have been requested by any one; and the law having prescribed a fee of ten cents for each written notice, I think there is not the slightest ground for allowing more under any such pretence as that all but one are copies, or under any pretence whatever. Each of the notices in this case follow precisely the form prescribed by the justices of the supreme court in form No. 6 [Rice, Manual, No. 22],[2] and each contains seven complete folios. The fee of ten cents for each is, therefore, grossly inadequate, but I am not authorized to substitute my judgment for the provisions of the statute.

The register has recommended that the assignee be allowed ten dollars as a reasonable compensation for his services, besides the actual disbursements made by him. The bankrupt objects to this allowance as unauthorized by the act. He does not object to the reasonableness of the allowance, if it is authorized, but he contends that there can be no allowance to an assignee, except "out of money in his hands," and it is admitted that there is no money in his hands in this case. On the other hand, the assignee asks for a larger allowance than ten dollars. The papers show that no assets or effects whatever were surrendered by the bankrupt, and that, in fact, he had nothing except his wearing apparel. Only one creditor proved his debt. And the assignee has had the least

possible amount of trouble in attending to his duties in the case. I think, therefore, that the allowance recommended is reasonable, and cannot be complained of by the assignee. But the question remains, is any allowance authorized? Section 47 provides, that the assignee "shall be allowed, and may retain, out of money in his hands, all the necessary disbursements made by him in the discharge of his duty, and a reasonable compensation for his services, in the discretion of the court." I think it too plain for discussion, that this provision means, that the assignee is to be allowed both his disbursements, and, at all events, a reasonable compensation for his services in all cases, and that he may retain the sum allowed out of money in his hands, if he has any. The assignee is required to give notices by mail and by publication in newspapers, and to perform other services, involving actual expenditures. It is preposterous to suppose, that these disbursements are not to be refunded except where assets come to his hands; and the statute places the allowance of a reasonable compensation for services precisely upon the same footing as the allowance for disbursements. Besides, section 28 provides that he "shall not be obliged to proceed until the necessary funds are advanced or secured." The provision contained in section 28, relating to this subject, does not conflict with the provision in section 17, except so far, perhaps, as to limit the allowance for receiving and paying out money, to a certain per centum graduated by the amount. The actual disbursements made by the assignee have been paid him, by the bankrupt, but he is allowed the further sum of ten dollars. The taxation of the various officers must be reformed so as to accord with the principles announced in this opinion.

---

[2] [From 1 Am. Law T. Rep. Bankr. 9.]

